UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COOK,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>　　　　　　Defendants. | Case No. 15-cv-05099-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |

This matter came before the Court on June 6, 2016, for a hearing on Defendant's motion to dismiss Plaintiff's Third Amended Complaint. Having carefully considered the parties' written and oral arguments, the Court hereby GRANTS Defendant's motion for the reasons set forth below.

**BACKGROUND**

The parties are by now familiar with the underlying facts of this case. Having ruled on two previous motions to dismiss, the Court is now presented with Plaintiff David Cook's Third Amended Complaint ("TAC"). Docket No. 28. The TAC alleges six claims for relief; the first four claims are against Defendant County of Contra Costa ("the County") under 42 U.S.C. § 1983 ("Section 1983"), and the final two claims are against individual County employees who have not yet been served.

In direct response to the Court's previous orders, Plaintiff has added new allegations to the TAC, including: outlining Plaintiff's counsel's attempts to obtain policies, procedures and other records in "pre-suit investigation" (TAC ¶¶ 31-38); identifying an inmate grievance policy from another case and asserting that all County jails use the same policies (*id*. ¶¶ 40-43); stating Plaintiff's recollection of the process he was instructed to follow in order to request medical care at the jail (*id*. ¶ 44); descriptions of various other incidents where Plaintiff was denied immediate medical treatment or

1   attention (*id.* ¶¶ 48-52); and a statement that between September and November 2014,

2   Plaintiff "filed 11 grievances that were ignored or never acted on" (*id.* ¶ 53).

3       The County moved to dismiss the TAC on April 21, 2016.  Mot. (Docket No. 33).

4   Plaintiff timely opposed, and the County timely replied.  Opp'n (Docket No. 34); Reply

5   (Docket No. 35).  Because the individual defendants have not yet been served, the motion

6   to dismiss – as well as this Order – pertains only to the County.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party."  *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.  The non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

A court may deny leave to amend "if amendment of the complaint would be futile."  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).  However, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies.  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

## DISCUSSION

### I. Plaintiff's First, Second, Third, and Fourth Claims are Dismissed.

To state a claim under Section 1983, the complaint must show: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). All four of Plaintiff's Section 1983 claims allege violations of the Eighth Amendment. "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.' " *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, the standard requires actual or constructive knowledge consistent with the criminal law standard of recklessness – it is not enough to say that a person *should have* been aware of the risk. *Farmer*, 511 U.S. at 836-37; *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001).

For municipal liability under a deliberate indifference theory, a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 387 (1989). Thus, the plaintiff must show that the municipality was on notice that its omission would likely result in a constitutional violation. *Farmer,* 511 U.S. at 841. Notably, "much more difficult problems of proof" are presented in a case where a city employee acting under a constitutionally valid policy violated someone's rights. *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 406 (1997); *Gibson*, 290 F.3d at 1186.

///
///
///
///
///

### A. Plaintiff fails to allege direct municipal liability because he does not identify an official County policy, or a persistent and widespread practice that amounts to an unofficial policy, that caused his injury.

It is well-settled that Plaintiff cannot hold the County, a municipality, liable for employees' actions under a *respondeat superior* theory. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, under *Monell*, a municipality can be sued directly under Section 1983 only where (1) the alleged unconstitutional conduct is the result of an official policy, pattern, or practice, or (2) a government practice, although "not authorized by written law . . . [is] so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (citation omitted). "In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts or habits.' " *Bedford v. City of Hayward*, No. 12-CV-00294-JCS, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (quoting *Warner v. Cty. of San Diego*, No. 10-CV-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011)).

Plaintiff has now been afforded three opportunities to properly allege *Monell* liability. *See* FAC Dismissal Order at 6-8 (dismissing the FAC for failure to state a claim of municipal liability under *Monell*); SAC Dismissal Order at 8-9 (same). Yet the TAC still provides nothing but conclusory allegations to allege a County "policy or custom" of "delay and denial" of medical treatment. Even assuming that the conduct of the WCDF employees was unconstitutional under the Eighth Amendment, the TAC fails to identify the "policy or custom" that caused the alleged constitutional violations, such that the harm can be fairly attributable to the County, as opposed to individual actors.

In response to the fact that Plaintiff is unable to identify a policy directing the County employees to "delay and deny" medical treatment, Plaintiff points to the policy for filing grievances in the County, which Plaintiff alleges is "similar in procedure as was stated in [*Scott v. Contra Costa Cty. Sheriff's Dep't of Martinez Det. Facility*, No. 11-CV-4728-YGR(PR), 2013 WL 3354245 (N.D. Cal. July 1, 2013)]." TAC ¶ 39. Plaintiff goes on to outline the 6-step appeal process, *Id.* ¶ 42, and outlines his recollection of the

grievance policy to which he was subjected. *Id.* ¶ 44. However, the inmate grievance policy is not the cause of Plaintiff's alleged injury. Instead, Plaintiff alleges that deputies ignored discharge instructions (*Id.* ¶¶ 46, 52), refused to give him medication (*Id.* ¶¶ 50-51), and shut down the jail's phone triage system in times of need (*Id.* ¶ 48). Those facts do not allege that an official County policy caused Plaintiff's injury.

In absence of an official County policy, Plaintiff may allege municipal liability on the basis of a well settled custom or practice that rises to the level of unofficial policy. "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled . . . policy.' " *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Plaintiff alleges a number of separate incidents in an attempt to allege a widespread practice of "delay and denial" of medical treatment. First, Plaintiff describes an incident where Plaintiff and other inmates were exposed to toxic smoke, the telephone triage system for handling inmates' requests was prematurely shut down, and Plaintiff was "never evaluated for his medical complaint" following the incident. TAC ¶ 48. Second, Plaintiff describes an instance in August of 2012, following the smoke exposure, where a nurse, based upon observation, concluded that Plaintiff was having a heart attack, then administered pills and rushed Plaintiff to the hospital via ambulance. *Id.* ¶ 49. Finally, Plaintiff describes a series of events following the September 2014 slip-and-fall where Plaintiff was forced to pack his belongings for a facility transfer. *Id.* ¶ 50. He requested his medicated eye drops and to see medical staff before the transfer; both requests were summarily denied by the deputy in charge. *Id.* After the transfer, Plaintiff alleges that he requested his eye drops and complained of pain, but his requests were ignored and he was instead locked in an intake room without food or his medications. *Id.* ¶ 51. When Plaintiff advised a deputy that his doctor required that Plaintiff have a ground floor room, the

deputy insisted on assigning Plaintiff to the second floor, stating that he runs the module "his way." *Id*. ¶ 52.

These incidents are not similar enough in nature to constitute a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Frary v. Cty. of Marin*, 81 F. Supp. 3d 811, 834 (N.D. Cal. 2015) (quoting *Trevino*, 99 F.3d at 918). Rather, these incidents seem to suggest that Plaintiff's injuries were caused by particular deputies *not* following orders, as opposed to following a County policy amounting to deliberate indifference to medical needs. Furthermore, the majority of the alleged incidents happened to Plaintiff alone. "While the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court." *Roy v. Contra Costa Cty.*, No. 15-CV-02672-TEH, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016). As the Court has previously stated, such a burden is especially important here, where it is facially implausible that the County maintains an official, County-sanctioned policy to ignore discharge instructions and deny inmates necessary medical care.

### B. Plaintiff fails to allege indirect municipal liability because he does not identify specific deficient training orthe County's knowledge of such.

To allege municipal liability on the basis of inadequate training or failure to supervise, a plaintiff must allege facts that – if proven – would show "that the deficiency in training actually caused" the alleged conduct, or that any failure to supervise was so inadequate as to constitute deliberate indifference. *Harris*, 489 U.S. at 391; *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Mere negligence in training or supervision [] does not give rise to a Monell claim." *Dougherty*, 654 F.3d at 900. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citations omitted).

Furthermore, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program

1  that will cause violations of constitutional rights." *Id.*; *see also Flores v. Cty. of Los*
2  *Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (plaintiff must allege facts to show County
3  disregarded known or obvious consequences that omission in training program would
4  cause violation of constitutional rights). Indeed, "absent evidence of a program-wide
5  inadequacy in training, any shortfall in a single officer's training can only be classified as
6  negligence on the part of the municipal defendant – a much lower standard of fault than
7  deliberate indifference." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484-85 (9th Cir.
8  2007) (citations and quotations omitted).

9  Here, Plaintiff's only allegations of inadequate training or supervision are wholly
10 conclusory. *See* TAC, ¶¶ 68 ("The policies of said Defendants were a direct and proximate
11 cause of Plaintiff's injuries in that said Defendants failed to adequately train and supervise
12 their employees and/or agents to prevent the occurrence of constitutional violations
13 occurring in this incident. Said Defendants also failed to promulgate appropriate policies
14 or procedures or take other measures to prevent this incident."); 73 (same wording); 77
15 (same wording). Plaintiff fails to plead any facts to show a pattern of injuries causally
16 linked to inadequate training, to show the policymakers' actual knowledge of violations, or
17 to show approval of an inadequate training program. Plaintiff further fails to allege facts
18 that "authorized policymakers approve a subordinate's decision and the basis for it."
19 *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). The only allegation as to such
20 ratification is wholly conclusory. *See* TAC ¶ 76 ("Defendants Livingston, Brooks,
21 Schuler, O'Mary, [and] Goldstein [] tacitly encouraged, ratified and/or approved of the
22 acts and/or omissions alleged herein, and knew that such conduct was unjustified and
23 would result in violations of constitutional rights.").

24 For these reasons, Defendant's motion to dismiss Plaintiff's Section 1983 claims
25 against the County is GRANTED. Because Plaintiff has had three opportunities to allege
26 sufficient facts under *Monell* but has failed to do so, it is clear that amendment could not
27 cure the deficiencies; therefore the dismissal is with prejudice.
28

## II. The Court Declines to Dismiss Plaintiff's Fifth and Sixth Claims at This Time.

In a footnote to its motion, the County requests that the Court dismiss Plaintiff's Fifth and Sixth claims, which are asserted against the individual defendants only. The Court previously dismissed these claims against the County, on the basis that Plaintiff's government tort claim did not allege facts to support medical negligence and/or failure to summon medical care claims, and therefore the County was not on requisite notice of those claims. SAC Order at 5-6 (Docket No. 24). The same reasoning would apply to the individual defendants, as the pertinent Government Code sections apply to employees of government entities as well as the entities themselves.

The County asserts that "[a] separate motion to dismiss the state law claims by the individual defendants . . . is not necessary and a waste of judicial time and resources." Mot. at 1 n.2. While this may be true in theory, the request puts the Court in the unusual and undesirable position of deciding an issue that has not been opposed in briefing or had a hearing, on behalf of defendants that have not yet appeared. The Court declines to do so.

## CONCLUSION

For these reasons, Defendant's motion to dismiss is hereby GRANTED. The First, Second, Third and Fourth Claims for Relief in Plaintiff's Third Amended Complaint are DISMISSED as to Defendant County of Contra Costa. Because Plaintiff has demonstrated that he cannot allege any facts to cure the deficiencies discussed above, the dismissal is with prejudice. Upon receipt of this order, Plaintiff shall serve the remaining Defendants forthwith.

**IT IS SO ORDERED.**

Dated: 06/21/16

_____
THELTON E. HENDERSON
United States District Judge